**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 87**

Docket No. AT-0752-09-0698-I-5

**Tamarah T. Grimes,**

**Appellant,**

**v.**

**Department of Justice,**

**Agency.**

December 8, 2014

Stephanie L. Ayers, Esquire, and Thad M. Guyer, Esquire, Medford, Oregon, for the appellant.

Jill A. Weissman, Esquire, and Kimya Jones, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained her removal from employment. For the reasons that follow, the appellant's petition for review is DENIED and the administrative judge's initial decision is VACATED IN PART AND AFFIRMED IN PART.

BACKGROUND

¶2      At the time of her removal, the appellant served as a Paralegal Specialist with the U.S. Attorney's Office for the Middle District of Alabama. MSPB

Docket No. AT-0752-09-0698-I-1, Initial Appeal File (IAF), Tab 12 at 38 of 83. Pursuant to the agency's employment security regulations, the appellant's position was designated as a critical-sensitive (Level 3) position, which included positions within the agency that could require, among other things: (1) access to, or afford a ready opportunity to gain access to, secret and/or confidential national security information (NSI) and material; or (2) access to grand jury information. *Id*. at 61, 68 of 91.[1] Based upon a report prepared by the agency's Office of Inspector General, the agency's Chief of Personnel Security determined that the appellant should not be afforded the opportunity to gain access to secret and/or confidential NSI material or grand jury information, and she further found that the appellant's "continued assignment as a Paralegal Specialist poses an unnecessary and unacceptable operational security risk to the [Department of Justice]." *Id*. at 61 of 91. Citing this finding, the agency proposed the appellant's removal on two charges: failure to maintain a qualification of her position and misrepresentation under oath. *Id*. at 36-45 of 78.

¶3        In its notice of proposed removal, the agency afforded the appellant the opportunity to submit a written response simultaneously addressing both her proposed removal and the agency's determination that she was ineligible to have access to secret and/or confidential NSI and that she posed an unnecessary and unacceptable operational security risk. *See id*. at 40-43 of 78. The appellant submitted a written response addressing both issues, *id*. at 62-66 of 83, and, after reviewing the appellant's response, the Chief of Personnel Security determined that her "initial decisions to revoke [the appellant's] eligibility to obtain access to secret and/or confidential NSI material, and that her continued assignment as a Paralegal Specialist posed an unnecessary and unacceptable operational security risk to the Department, were correct," *id*. at 49 of 83. In her written

---

[1] NSI is synonymous with classified information. *See* Executive Order 13,526, § 6.1(i); *see also Doe v. Department of Justice*, 118 M.S.P.R. 434, ¶ 20 (2012).

reconsideration decision, the Chief of Personnel Security also stated that she had never met the appellant and had "no further information regarding her [equal employment opportunity (EEO)] activity, and her EEO activity played no role in [her] initial or current determination." *Id*. at 50 of 83.

¶4 After considering the appellant's response, including her response to the Personnel Security Chief's reconsideration decision, the deciding official sustained the charges and imposed the appellant's removal. *Id*. at 40-47 of 83. In reaching his decision, the deciding official explained that the "Chief of the Personnel Security Section has made a final determination to revoke [the appellant's] eligibility for access to Secret and/or Confidential NSI material and that [the appellant] pose[s] an operational security risk to the Department," and that "[t]hese are required qualifications for [her] position." *Id*. at 46 of 83. In rendering his decision, the deciding official also considered and rejected the appellant's allegation that the decisions to revoke her eligibility to hold a critical-sensitive position and to propose her removal were in reprisal for her prior EEO activity. *Id*. at 45-46 of 83.

¶5 The appellant filed an initial appeal of her removal and raised a whistleblower reprisal affirmative defense.[2] IAF, Tab 1. After several dismissals without prejudice, the administrative judge held a hearing and issued an initial decision sustaining the appellant's removal. MSPB Docket No. AT-0752-09-0698-I-5, Initial Appeal File (IAF-5), Tab 35, Initial Decision (ID). In his initial decision, the administrative judge applied the Supreme Court's decision in *Department of the Navy v. Egan*, 484 U.S. 518 (1988), and sustained the agency's charge that the appellant failed to maintain a qualification of her position under the limited scope of review employed in such cases. ID at 10-15. Additionally,

---

[2] Although the appellant alleged reprisal for prior EEO activity in response to the proposal to remove her, she did not raise EEO reprisal as an affirmative defense in this appeal. *See* IAF, Tab 1.

the administrative judge concluded that the deciding official did not consider ex parte information under *Ward v. U.S. Postal Service*, 634 F.3d 1274 (Fed. Cir. 2011), when he reviewed the Chief of Personnel Security's decision to reaffirm her prior decision because the reconsideration decision, and the information contained therein, was cumulative of the prior decision. ID at 13-15. Lastly, the administrative judge found that the appellant could not maintain her affirmative defense of whistleblower reprisal because she was removed based upon a security clearance determination, ID at 15, and he also rejected her claim that the agency's Chief of Personnel Security incorrectly applied the agency's adjudicative guidelines when deciding whether to deny her access to sensitive and/or confidential NSI, ID at 16-21. Because the administrative judge sustained the appellant's removal under the agency's first charge of failure to maintain a qualification of her position, the administrative judge did not adjudicate the agency's second charge of misrepresentation. ID at 21.

¶6      The appellant has filed a petition for review focusing primarily on the administrative judge's decision to admit certain testimony at the hearing, and the agency has filed a response. Petition for Review (PFR) File, Tabs 2, 4. Following the issuance of the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Gargiulo v. Department of Homeland Security*, 727 F.3d 1181 (Fed. Cir. 2013),[3] the Board issued an order inviting the parties to submit additional argument as to the applicability of that decision. PFR File, Tab 6. The agency has filed a response asserting that *Gargiulo* supports the manner in which the administrative judge reviewed the agency's charge, and the

---

[3] In *Gargiulo*, 727 F.3d at 1186-87, the Federal Circuit subsequently held that the Board cannot consider the reasonableness of an agency's security clearance determination in adjudicating an adverse action based on the suspension or revocation of a security clearance.

appellant has filed a response arguing that *Gargiulo* is inapposite because the appellant never held a security clearance.  PFR File, Tabs 7, 9.

## ANALYSIS

The charge of failure to maintain a qualification of the position is sustained.

¶7        In an appeal of an adverse action under 5 U.S.C. § 7513 based on the denial, revocation, or suspension of a security clearance, the Board does not have the authority to review the substance of the underlying security clearance determination.  *Ryan v. Department of Homeland Security*, 121 M.S.P.R. 460, ¶ 5 (2014).   Rather, the Board only has the authority to review whether: (1) the appellant's position required a clearance; (2) the clearance was denied, revoked, or suspended; and (3) the employee was provided with the procedural protections specified in 5 U.S.C. § 7513.   *Ryan*, 121 M.S.P.R. 460, ¶ 5.   Section 7513, however, is not the only source of procedural protections for employees subject to adverse actions; agencies must also comply with the procedures set forth in their own regulations.  *Id.*  An employee also has a due process right to notice of the grounds in support of the adverse action and a meaningful opportunity to invoke the discretion of a deciding official with the authority to select an alternative outcome, to the extent an alternative penalty may have been feasible. *Id.*; *see Flores v. Department of Defense*, 121 M.S.P.R. 287, ¶ 10 (2014).

¶8        We agree with the administrative judge that the agency has met these standards and has established by preponderant evidence that the appellant failed to meet a qualification of her position when she was denied eligibility to hold a critical-sensitive position.   The record reflects that the appellant's Paralegal Specialist position was designated as a Level 3 critical-sensitive position, which required her to maintain eligibility to access classified information, and that the agency's Chief of Personnel Security revoked the appellant's eligibility to hold a

critical-sensitive position and to obtain access to secret and/or confidential NSI.[4] IAF, Tab 12 at 49 of 83 and 68 of 91.  The record further reflects that the agency complied with 5 U.S.C. § 7513(b) by providing the appellant 30-days' advance notice of the proposed adverse action, a period of more than 7 days to reply, the right to be represented, and a written decision on the proposed adverse action. *Id.* at 36-45 of 78 and 40-47 of 83.  The agency's adverse action based on the appellant's loss of eligibility to hold a critical-sensitive position and to obtain access to classified information is SUSTAINED.[5]

The agency did not violate the appellant's right to due process.

¶9        During the prehearing conference, the administrative judge identified a potential due process violation based upon the deciding official's consideration of the Chief of Personnel Security's reconsideration decision without giving the appellant an opportunity to respond to that decision.  IAF-5, Tab 28.  In his initial decision, however, the administrative judge found that the Chief of Personnel Security's reconsideration decision was not new and material information because the information within the reconsideration decision was cumulative of the original decision to deny the appellant eligibility to hold a critical-sensitive

---

[4] The Board has found that an agency's decision to revoke an employee's eligibility to obtain access to classified information is subject to the Board's limited scope of review under *Egan*.  *See Doe*, 118 M.S.P.R. 434, ¶ 19 (citing *Conyers v. Department of Defense*, 115 M.S.P.R. 572, ¶ 17 (2010), *rev'd on other grounds sub nom. Kaplan v Conyers*, 733 F.3d 1148, 1160 (Fed. Cir. 2013), *cert denied sub nom. Northover v. Archuleta*, 134 S. Ct. 1759 (2014)).

[5] Pursuant to the limited scope of review under *Egan*, the Board does not have the authority to review the merits of the agency's reasons for revoking the appellant's eligibility to obtain access to classified information.  *See Brown v. Department of Defense*, 121 M.S.P.R. 584, ¶¶ 8-9 (2014).  We thus do not reach the appellant's arguments on review that the administrative judge erred in admitting certain testimony below, *see* PFR File, Tab 2 at 3-5; insofar as the administrative judge reviewed and adjudicated the grounds for the agency's decision to revoke the appellant's eligibility to hold a critical-sensitive position and to obtain access to classified information, those portions of the initial decision are VACATED.

position; and he concluded that the deciding official therefore did not consider any new information in rendering his decision to which the appellant did not have an opportunity to respond. ID at 14-15.

¶10      The Federal Circuit has held that, when a deciding official receives new and material information by means of an ex parte communication, "a due process violation has occurred and the former employee is entitled to a new and constitutionally correct removal procedure." *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999). Both the Federal Circuit and the Board have found, however, that not all ex parte communications rise to the level of due process violations; rather, only ex parte communications which introduce new and material information to the deciding official are constitutionally infirm. *Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 8 (2013). In *Stone*, the Federal Circuit identified the following factors to be used to determine whether ex parte information is new and material: (1) whether the ex parte information introduces cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377. In the context of security clearance determinations, moreover, the Board has found that an appellant is entitled to notice of the information the deciding official relied upon in making his penalty determination, including the factual basis for the underlying security clearance determination, even if the appellant does not have a due process right to notice of the factual basis supporting the charge alone. *See Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 31 (2014).

¶11      We agree with the administrative judge that the deciding official did not commit a due process violation when he considered and relied upon the Chief of Personnel Security's reconsideration decision revoking the appellant's eligibility to hold a critical-sensitive position. The record reflects that the Chief of

Personnel Security's reconsideration decision merely reaffirmed the prior decision to revoke the appellant's eligibility to obtain access to NSI and that it did not rely upon any new bases or grounds for revoking the appellant's eligibility to which she did not have an opportunity to respond. *See* IAF, Tab 12 at 49-50. A deciding official does not commit a due process violation when he considers ex parte information that merely "confirms or clarifies information already contained in the record." *Blank v. Department of the Army*, 247 F.3d 1225, 1229 (Fed. Cir. 2001). Here, we find that the Chief of Personnel Security's reconsideration decision confirmed her prior decision and therefore did not introduce new and material information to the deciding official. We further find that this case is dissimilar from instances where, for example, deciding officials have drawn negative credibility findings against appellants based on ex parte communications or have considered aggravating factors which were not contained within the agencies' proposal notices without giving the appellants an opportunity to respond. *See, e.g.*, *Young v. Department of Housing & Urban Development*, 706 F.3d 1372, 1377 (Fed. Cir. 2013) (finding that the deciding official believed the appellant was lying based on an ex parte interview); *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶¶ 9-10 (2012) (ex parte information consisted of deciding official's consideration of appellant being *Giglio*-impaired).

¶12      We also find that the deciding official did not commit a due process violation when he considered, and rejected, the arguments the appellant raised in response to her notice of proposed removal. In her written reply submitted to both the deciding official and the Chief of Personnel Security, the appellant argued, among other things, that she was wrongly denied eligibility to obtain access to classified information, that she did not engage in the underlying misconduct, and that her proposed removal was in retaliation for her filing prior EEO complaints. IAF, Tab 12 at 62-66 of 83. After considering the appellant's allegations, however, the deciding official concluded that the Chief of Personnel Security properly revoked the appellant's eligibility to obtain access to classified

information, and he rejected the appellant's allegation that her removal was motivated by retaliatory animus. *Id*. at 40-45 of 83.

¶13       We find no due process error with the deciding official's actions. Rather, these facts are similar to *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶ 11 (2014), in which the appellant raised certain allegations in her response to the proposed removal and the deciding official rejected those allegations in the course of rendering his decision. Under such circumstances, the Board explained that a deciding official does not violate an employee's right to due process when he considers issues raised by the appellant in her response to the proposed adverse action and then rejects those arguments in reaching a decision. *Id*., ¶¶ 11-12; *see Blank*, 247 F.3d at 1229; 5 C.F.R. § 752.404(g)(1) (in rendering a decision on a proposed adverse action, the agency will consider the reasons specified in the notice and any answer of the employee or her representative, or both, made to a designated official). In reaching this conclusion, the Board explained that an employee is not entitled to know the particular weight the deciding official will attach to her arguments raised in response to the proposed adverse action in advance of the final decision. *See Wilson*, 120 M.S.P.R. 686, ¶ 12; *cf. Harding v. U.S. Naval Academy*, 567 F. App'x 920, 925-26 (Fed. Cir. 2014) (the appellant was "not deprived of due process by not being advised in advance that the deciding official might draw [an] inference from the nature of the charged conduct"). Thus, consistent with *Wilson*, we find that the deciding official did not commit a due process violation when he considered and rejected the arguments the appellant raised in her reply to the notice of proposed removal.[6]

---

[6] The Chief of Personnel Security also stated in her reconsideration decision that the appellant's EEO activity played no role in her decision to revoke the appellant's eligibility to access NSI. IAF, Tab 12 at 50 of 83. We similarly find that this statement was in response to the appellant's allegation of EEO reprisal and does not constitute new and material information under *Ward*/*Stone*. *See id*. at 62 of 83; *see also Wilson*,

<u>The agency established nexus and the reasonableness of the penalty.</u>

¶14     It is well settled that, where an adverse action is based on the failure to maintain a security clearance—or in this case, the failure to maintain eligibility to hold a critical-sensitive position and to obtain access to classified information— the adverse action promotes the efficiency of the service because the absence of a properly authorized security clearance is fatal to the job entitlement.  *See Munoz v. Department of Homeland Security*, 121 M.S.P.R. 483, ¶ 13 (2014) (quoting *Robinson v. Department of Homeland Security*, 498 F.3d 1361, 1365 (Fed. Cir. 2007)).   We therefore find that the agency established a nexus between its adverse action and the efficiency of its operational mission.  *Id.*; *see* ID at 21. We similarly agree with the administrative judge's decision to sustain the penalty of removal.  ID at 21.  There is no evidence in the record that the agency has a mandatory policy of considering employees for reassignment prior to removing them for the loss of eligibility to hold a critical-sensitive position and to obtain access to NSI, *see Ryan*, 121 M.S.P.R. 460, ¶¶ 7, 10-11, and the appellant has presented no other basis on review to disturb the agency's imposed penalty.

<u>The administrative judge correctly declined to adjudicate the appellant's whistleblower reprisal affirmative defense.</u>

¶15     Finally, we agree with the administrative judge's decision not to adjudicate the appellant's affirmative defense of whistleblower reprisal because such a claim would go to the merits of the agency's underlying basis for determining that the appellant is not eligible to hold a critical-sensitive position and obtain access to NSI.  *See Doe v. Department of Justice*, 121 M.S.P.R. 596, ¶ 10 n.5 (2014)

---

120 M.S.P.R. 686, ¶ 11.  We note, moreover, that the appellant appears to have argued only to the deciding official that the proposed removal was retaliatory, not that her eligibility to obtain access to classified information was revoked in retaliation for her prior EEO activity.  IAF, Tab 12 at 50 of 83.  Regardless of the nature of the appellant's allegation, the Board is without the authority to consider whether EEO retaliation played a role in the agency's security clearance determination.  *See Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 18 (2014).

(finding that an appellant cannot maintain a whistleblower reprisal claim challenging a security clearance determination under the Whistleblower Protection Enhancement Act of 2012); *see also Hesse v. Department of State*, 82 M.S.P.R. 489, ¶ 9 (1999), *aff'd*, 217 F.3d 1372 (Fed. Cir. 2000).  Thus, to the extent that the administrative judge declined to adjudicate this issue, we AFFIRM the initial decision.  ID at 15-16.

## ORDER

¶16       This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If

you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.